**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE**

**MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:07cr219-MHT |
| | ) | (WO) |
| DARRELL GAMBLE | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:18cr275-MHT |
| | ) | (WO) |
| DARRELL GAMBLE | ) | |

**OPINION AND ORDER**

Defendant Darrell Gamble is before the court for sentencing in two cases. In the first case (2:07cr219-MHT), he pled or was found guilty of three charges in a revocation petition: testing positive for cocaine and crack cocaine on two occasions and otherwise engaging in new criminal conduct, namely, being a felon in possession of a firearm, all in early 2018. In the second (2:18cr275-MHT), he pled guilty to an indictment charging him with being a felon in possession of a firearm, which

charge was based on the same facts alleged in the revocation petition.

The court is now faced with the question of sentencing a defendant whom all parties recognize is a drug addict, who appears potentially to possess an underlying or co-occurring mental disorder as well as potential cognitive deficits, and who has received little to no prior mental-health and substance-abuse treatment.

This court has held that where there is a reasonable basis to believe that a defendant's mental disease or defect--including a substance-abuse disorder--contributed to the conduct underlying his or her conviction, the court should order a mental-health evaluation. *See United States v. Kimbrough*, No. 2:07cr260, 2018 WL 989541 (M.D. Ala. Feb. 20, 2018); *see also United States v. Mosley*, 277 F. Supp. 3d 1294 (M.D. Ala. 2017) (discussing the issue of substance-abuse disorders in further detail). Such an evaluation is necessary to aid the court in fashioning an appropriate sentence, by helping to determine (1) how a defendant's mental disease or defect may mitigate his or

2

her *culpability* for the offense conduct; and (2) what type of *treatment*, if any, the defendant should receive during supervised release.[1] The mental-health recommendation should, therefore, focus on these dual, overlapping issues of culpability and treatment: the role, if any, defendant's mental illness played in his or her charged conduct, and what treatment is recommended for defendant's illness in light of his or her individual characteristics and history.

Here there is strong reason to believe that Gamble's severe addiction to cocaine (and possibly other substances), and potentially other underlying or co-occurring mental disorders and cognitive deficits, contributed to the revocation violations and related offense. Gamble has an extremely lengthy and prolific history of drug use. By his own admission, he first used marijuana at age 11, and was using it daily up until the time of his arrest. When Gamble was age 13 his brother was

---

1. By "culpability" the court does not mean whether a defendant had a defense such as insanity, or whether a defendant's action was not "voluntary" or committed with the requisite mens rea; rather, the court means "culpability" in the sense of possible mitigation.

murdered, after which he descended into heavier substance abuse with regular use of alcohol and Lortab (hydrocodone, an opiate). To add to the situation, both of his parents were alcoholics. Gamble began using cocaine at age 17 and developed a daily habit, followed by crack cocaine. From 2006 until his arrest and incarceration in 2007 he regularly used ecstasy and Tussinex (an opiate). In addition, Gamble was expelled from junior high school at the extraordinarily early level of sixth grade, prior to which he had been struggling in special education classes.

Gamble has an extensive criminal history, consisting primarily of 10 separate drug-related convictions between 1991 and 2008. In the 2008 Presentence Investigation Report for his underlying conviction, he reported that he sold drugs to support his own drug habit. Here, there is a clear potential connection between the two substance-use violations of supervised release and Gamble's apparent addiction to cocaine and crack cocaine. Moreover, the evidence put on in the revocation-petition hearing regarding the gun possession violation, for which he also

4

pled guilty to a new criminal charge, demonstrated that, during the incident in which he possessed the gun, he had traveled to a different neighborhood in order to buy drugs.

Finally, Gamble has had little to no substance-abuse or mental-health treatment in the past. He attended a substance-abuse program in prison, but he reports that he did not complete the program, and in any case the program did not involve intensive treatment or 'dual-diagnosis' treatment for any underlying or co-occurring mental illness. Other than a brief local evaluation arranged by defense counsel, Gamble has had no previous mental-health evaluations or treatment.

18 U.S.C. § 3552(b) authorizes the court to order that the study be done by the Bureau of Prisons (BOP) upon the finding of a "compelling reason" or where there are no adequate professional resources available in the local community to perform the study. In this case, the court seeks, with the agreement of the parties, a comprehensive, longitudinal evaluation of Gamble's mental health, including whether he suffers from substance-abuse disorder

and any co-occurring mental disorders or cognitive deficits, and the development of a specialized treatment plan that will help to ensure that he does not continue to violate the law. It is undisputed that there are no locally available resources that could provide such an evaluation. Because there are no adequate professional resources available in the local community, the court need not reach the issue of whether there is a "compelling reason" for the inpatient study.

Also, because Gamble does not oppose being transported, and committed, to a BOP facility for the mental-health evaluation, no due-process concerns are raised. *See Mosley*, 277 F. Supp. 3d at 1300.

Following its continuance of the revocation hearing, the court ordered the parties to submit briefs indicating whether Gamble should be evaluated at a BOP facility or locally, and proposing issues to be included as subjects of the evaluation. *See* 2:07cr219-MHT, Order (doc. no. 79). Gamble agrees with the court that a longitudinal evaluation would be appropriate, and the government does not object.

In addition, the parties in a joint filing consented to Gamble being simultaneously evaluated by the BOP for sentencing in the separate, related indictment. *See* No. 2:18cr275-MHT, Jt. Position of Parties, (doc. no. 14). However, defense counsel objects to two of the government's proposed assessments to be included in the evaluation. *See* 2:07cr219-MHT, Def.'s Reply to the Government's Response (doc. no. 81). Gamble first objects to administration of the Psychopathy Checklist-Revised (PCL-R), which he argues is flawed and also inapplicable here because there is no basis to suspect that he is a 'psychopath.' Second, he objects to use of the Violence Risk Appraisal Guide-Revised (VRAG-R) as similarly inapplicable, because Gamble has no prior violent convictions.

Without reaching the issue of whether the PCL-R is scientifically flawed, the court agrees that these two tests are inappropriate in Gamble's circumstances. Based on the evidence presented in this case, including the 2008 PSR and Gamble's comportment and testimony at the revocation hearing, the court does not have a 'reasonable

7

basis' to believe that he is a 'psychopath,' or that such an evaluation would be helpful in fashioning a sentence. Similarly, because Gamble does not have a history of violent crime, the VRAG-R is inapposite. *See In re Detention of Belcher*, 189 Wash. 2d 280, 294 (2017) ("The VRAG-R is an actuarial instrument based on a cross section of released violent offenders ...."). Because they are inapplicable here, these assessments would likely be, at best, an unnecessary expenditure of BOP's finite resources, and, at worst, affirmatively misleading. Moreover, the court declines to include in the evaluation "Whether Mr. Gamble's mental health, mental capability, and/or possible drug addiction impacts his ability to refrain from future dangerousness," 2:07cr219-MHT, Government's Response to Court Order (Doc. no. 78) at 1, independent from his possible risk of future recidivism, because that question is better suited for a dangerousness evaluation pursuant to 18 U.S.C. § 4246. With these modifications, the parties' proposed questions are incorporated in the order below.

***

Gamble faces punishment for his non-compliance with the terms of his supervised release and for his conviction on a separate federal indictment, and there is reason to believe that the offense conduct in both cases was driven at least in significant part by the mental disorder that is his drug addiction, as well as potentially any underlying or co-occurring mental disorder(s) and/or cognitive deficiencies. In order to ensure that he is not inappropriately punished for having a disease, to assess accurately his culpability for the offense, and to mete out any necessary rehabilitative treatment, it is ORDERED as follows:

(1) Pursuant to the provisions of 18 U.S.C. § 3552(b), the United States Marshal for this district shall immediately remove defendant Darrell Gamble to the custody of the warden of an appropriate institution as may be designated by the Attorney General, where he is to be committed for the purpose of being observed, examined, and treated by one or more qualified psychiatrists or psychologists at the institution. The statutory time period

for the examination shall commence on the day defendant Gamble arrives at the designated institution. The examination shall be conducted in the suitable facility closest to the court, unless impracticable.

(2) Pursuant to 18 U.S.C. § 3552(b), the examining psychiatrists or psychologists shall evaluate defendant Gamble's psychological condition for the purposes of sentencing and shall include their findings in a report to be presented to this court.

(a) To assist the court in assessing defendant Gamble's culpability--that is, as a mitigating factor--the study shall discuss his mental-health history and characteristics, and shall particularly address (i) whether he suffers from a substance-abuse disorder, any other mental disorder(s) and if so, which one(s), as well as any cognitive deficiencies; (ii) if he has a substance-abuse disorder as well as another mental disorder or cognitive deficiencies, how, if at all, the other mental disorder(s) or cognitive deficiencies relate to or interact with his substance-abuse disorder, including whether the other

10

mental disorder(s) or cognitive deficiencies may be viewed as having caused, led to, or contributed to his substance-abuse disorder; (iii) the effect, if any, of defendant Gamble's repeated incarcerations on his substance-abuse disorder and any other mental disorder(s); (iv) what role, if any, his substance-abuse disorder, other mental disorder(s), and/or cognitive deficiencies played in his commission of the offenses for which he now faces sentencing; (v) how his substance-abuse disorder, other mental disorder(s), and/or cognitive deficiencies impact his ability to refrain from using illegal substances, to refrain from engaging in future criminal activity, and to meet other conditions of supervision, such as attending scheduled meetings with Probation; and (vi) how he scores on the Levels of Service Inventory-Revised (LSI-R) assessment.

(b) In addition to assessing whether defendant Gamble suffers from a substance-abuse disorder, any other mental disorder(s), and any cognitive deficiencies, the study shall provide recommendations for treatment to be provided

to him while on supervised release. The study should address, in light of his failure to refrain from reverting to the use of drugs and his other offense conduct, his personal characteristics, history, and circumstances; his mental health; which treatment modalities, treatment settings, and supportive or other services are likely to be most effective in helping him to refrain from using illicit drugs or violating other conditions of supervised release and to learn to respond to life stressors without resorting to illegal activities; what specific BOP programs are recommended, and why, in the event that he is incarcerated for an extended period of time, *see* https://www.bop.gov/inmates/custody_and_care/docs/20170914_ BOP_National_Program_Catalog.pdf (describing BOP programs); and whether, assuming sincere and good faith efforts on the part of Gamble, relapse is to be reasonably expected. Among other issues, the study shall address whether there is any medication that can be used in conjunction with any other treatment to address his substance-abuse disorder and any other disorder(s), and what, if anything, can be done

to break his cycle of drug use and violations of supervised release, apart from incarceration.

(3) Finally, the study shall discuss any other matters the BOP believes are pertinent to the sentencing factors set forth in 18 U.S.C. § 3553(a).

DONE, this the 10th day of August, 2018.

                             /s/ Myron H. Thompson
                             UNITED STATES DISTRICT JUDGE